UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/3/09
```

------------------------------------X

MICHAEL ERDHEIM,

                Plaintiff,              07 Civ. 8415

    -against-                    <u>OPINION</u>

COMMISSIONER OF INTERNAL REVENUE,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

      <u>Pro Se</u>

      Mr. Michael Erdheim
      1360 York Avenue (6F)
      New York, NY  10021

      <u>Attorneys for Defendant</u>

      PREET BHARARA
      United States Attorney for the
        Southern District of New York
      86 Chambers Street, 3rd Floor
      New York, NY  10007
      By:  Li Yu, Esq.

**Sweet, D.J.**

The defendant, the Commissioner of Internal Revenue (the "Defendant" or the "IRS") has moved under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., to dismiss the first and third causes of action alleged in the complaint of the plaintiff, Michael Erdheim, <u>pro</u> <u>se</u> (the "Plaintiff" or "Erdheim"). Based upon the conclusions set forth below, the IRS's motion is granted and the first and third causes of action are dismissed with prejudice.

The difficult and complicated relationship between the IRS and Erdheim is set forth in the complaint, the affidavit of Erdheim and the affidavit of Robert Baxter, Associate Area Counsel in the New York office of the Office of Chief Counsel of the IRS. The facts thus set forth are undisputed and reveal failures to comply with the requirements of the Internal Revenue Code by both parties. Notwithstanding, for the reasons advanced by the IRS, the requested dismissal is appropriate.

**I.   PRIOR PROCEEDINGS**

1

Erdheim filed his _pro_ _se_ complaint on September 28, 2007.  After extensions granted to move or answer, the instant motion to dismiss was marked fully submitted on March 25, 2009.

## II.  FACTS

The complaint and the affidavits establish the facts and background of the dispute between the parties.

On October 20, 1987, Erdheim and his then-spouse (the "Erdheims") filed a joint federal income tax return for the year 1986, reporting $413,078.00 in adjusted gross income but claiming that they only owed $3,138.00 in federal income tax.  They paid $3,138.00 along with filing their 1986 joint income tax return.  The IRS subsequently conducted an examination of that 1986 joint income tax return and determined that the Erdheims in fact owed additional taxes.  On February 28, 1996, the IRS made assessments against Erdheim for his 1986 income tax liabilities in the amounts of $161,730.00 in additional taxes due, $250,783.63 in accrued interest, and $148,833.21 in penalties.

2

On July 13, 1992, the Erdheims filed a joint
federal income tax return for the year 1990 reporting
$8,219.00 in adjusted gross income.  According to the joint
tax return, they owed $2,510.00 in 1990 federal income tax.
The Erdheims paid $2,276.00 along with filing that tax
return, and on August 10, 1992, the IRS made assessments
for the Erdheims' 1990 income tax liabilities in the amount
of $300.15 in accrued interest and $781.50 in penalties.

On June 16, 1993, Erdheim reported $137,461.00 in
adjusted gross income in a tax return filed for the year
1991.  According to his tax return, Erdheim owed $10,247.00
in income tax for 1991.  He did not pay that amount.  On
July 12, 1993, the IRS completed its processing of his 1991
income tax return and made assessments against Erdheim for
his 1991 income tax liabilities in the following amounts:
$10,247.00 in taxes due, $1,132.64 in accrued interest, and
$3,210.18 in penalties.

For the quarter ending June 30, 1991, Erdheim
reported $8,169.64 in payroll withholding tax liability in
a tax return filed on or about October 3, 1991.  Plaintiff
paid only $2,000 with his late-filed tax return.  On July
31, November 11, and December 16, 1991, the IRS made

3

assessments against Erdheim in the following amounts:
$6,169.64 in additional taxes due, $243.87 in accrued
interest, and $2,381.73 in penalties.

For the quarter ending September 30, 1991,
Erdheim reported $8,169.65 in payroll withholding tax
liability in a tax return filed on or about January 5,
1992.  He did not pay any payroll taxes to the IRS for that
period.  On October 31, 1991, and March 16 and April 20,
1992, the IRS made assessments against Erdheim in the
following amounts:  $8,169.65 in taxes due, $334.09 in
accrued interest, and $2,532.60 in penalties.

For the quarter ending December 31, 1991, Erdheim
reported $7,313.67 in payroll withholding tax liability in
a tax return filed on January 31, 1992.  He did not pay any
payroll taxes to the IRS for that period.  On March 23 and
April 27, 1992, the IRS made assessments against Erdheim in
the following amounts:  $7,313.67 in taxes due, $94.11 in
accrued interest, and $1,170.19 in penalties.

For the quarter ending March 31, 1992, Erdheim
reported $8,953.63 in payroll withholding tax liability in
a tax return filed on or about July 8, 1992.  Erdheim paid

4

$2,000 to the IRS with his late-filed tax return.  On April 30, August 10, and September 14, 1992, the IRS made assessments against Erdheim in the following amounts: $6,953.63 in additional taxes due, $214.61 in accrued interest, and $2,620.85 in penalties.

For the year 1992, Erdheim did not file a tax return with the IRS.  On October 14, 1996, the IRS estimated that Erdheim owed $9,059.00 in personal income tax for 1992 and made an assessment against him for his 1992 income tax liabilities in the following amounts: $9,059.00 in taxes due, $3,707.03 in accrued interest, and $4,379.71 in penalties.

On June 14, 1993, Erdheim filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York (the "E.D.N.Y. Bankruptcy").  By an order dated August 15, 1996, the Bankruptcy Court held that Erdheim's liabilities, including the taxes, interests and penalties that he owed to the IRS, would not be discharged in that proceeding.

The IRS submitted two claims for federal income tax and federal employment withholding taxes in the

5

E.D.N.Y. Bankruptcy.  On May 10, 2001, the Chapter 7

Trustee, Andrew M. Thaler (the "Trustee"), issued two

checks to the IRS in the amounts of $34,000 and $52,985.37,

pursuant to a court-approved plan of distribution.  The

Trustee sent these checks on behalf of Erdheim's bankruptcy

estate to the IRS in partial settlement of the IRS's

claims.

The IRS applied the entire amount of the

$52,985.37 payment from the Trustee to Erdheim's 1986

income tax liability and the $34,000 payment to his payroll

withholding tax liabilities.

On June 16, 2003, the IRS issued a Notice of

Determination Concerning Collection Action(s) under Section

6320 and/or 6330 (the "Notice of Determination") to

Erdheim.  The Notice of Determination advised Erdheim that

the IRS would commence collection actions with respect to

Erdheim's income tax liabilities for the years 1990-1992

because Erdheim had not submitted documentation to

substantiate his challenge to these taxes.  The notice also

advised Erdheim of his right to challenge the IRS's tax

liability determination by "fil[ing] a petition with the

United States Tax Court."



On July 1, 2003, Erdheim commenced Erdheim v. Commissioner of Internal Revenue, No. 10432-03 L (the "Tax Court Action") before the United States Tax Court challenging the IRS's determination of his income tax liabilities for the years 1986 and 1990-1992.

Before trial, Erdheim and the IRS reached a settlement, the terms of which are contained in an IRS Form 656, Offer in Compromise (the "Offer in Compromise").  A Tax Court Settlement Stipulation ("Stipulation") and the attached Offer in Compromise were filed on June 14, 2004 (collectively, the "Settlement").  In addition to his income tax liabilities for the years 1990-1992, the Settlement resolved all of Erdheim's other outstanding tax liabilities, including his 1986 income tax liability and quarterly payroll withholding tax liabilities described above, additional quarterly payroll withholding tax liabilities that he had incurred in the second, third and fourth quarters of 1992 and the first quarter of 1993, and annual federal unemployment withholding taxes that he had incurred in the years 1991-1993.

7

Pursuant to the Settlement, Erdheim agreed to
make twenty monthly payments of $100.00 per month to
resolve all of his outstanding tax liabilities.   In
addition, he agreed to "comply with all provisions of the
Internal Revenue Code relating to filing [his] returns and
paying [his] required taxes for five years" and that the
IRS would keep, as "additional consideration beyond the
amount of [his] offer," "any refund, including interest,
due to [him] because of overpayment of any tax or other
liability, for tax periods extending through the calendar
year that the IRS accepts the offer."   Decl. of Robert A.
Baxter ("Baxter Decl."), Ex. 3.


In the Offer in Compromise, Erdheim did not
contest that he was liable for his income tax or
withholding tax liabilities, but rather averred that he had
"insufficient assets and income to pay the full amount."
Id.


The Settlement was approved by the Tax Court in a
decision dated June 18, 2004.

8

Between October 2004 and February 2006, Erdheim
made twenty $100 payments to the IRS pursuant to the
Settlement.  However, due to internal miscommunications,
the offer-in-compromise unit of the IRS (the "Offer Unit")
did not process the Settlement until November 2006.  That
delay caused the IRS's automated data system to continue to
indicate that collection actions be taken with respect to
tax liabilities covered by the Settlement, see, e.g.,
Complaint at ¶¶ 28-30 (the IRS inadvertently levied
Erdheim's wages in November 2004); ¶ 63 (erroneous notice
of tax liability in August 2006); ¶ 66 (an inadvertently
issued notice of intent to levy in August 2007), although
no funds were obtained by the IRS from either Erdheim or a
third-party as a result of these collection actions.

In 2005, during the same period that the Offer
Unit failed to process the Settlement, it was determined
that Erdheim's tax liabilities for certain years from 1986
through 2003 had been improperly assessed.  The
reexamination caused the IRS's automated data system to
reflect certain overpayments by Erdheim.  Erdheim did not
file a timely administrative refund claim with the IRS in
connection with these overpayments.

9

After becoming aware of the inadvertent collection efforts resulting from the delay in processing the Settlement, the IRS no longer deems Erdheim to have any tax liability associated with any period prior to June 18, 2004, the time of the Settlement.

According to the IRS, if Erdheim meets his remaining obligations under the Settlement, including continuing to pay his required taxes until June 2011, the IRS will not undertake any further collection efforts against him based on to any tax liability associated with any period prior to June 18, 2004.  However, the IRS has contended that it has the right to collect all outstanding tax liabilities from Plaintiff in the event that he fails to comply with the obligations he specifically assumed in connection with the Settlement.

Erdheim's complaint sets forth three causes of action.  The first seeks injunctive relief to enforce the terms of the Tax Court Settlement Stipulation and the attached Offer in Compromise.  The second cause of action seeks a declaratory judgment.[1]  The third cause of action

---

[1] Because the IRS has not moved to dismiss this cause of action, and it is represented that the IRS and Erdheim plan to submit a stipulation

10

seeks an order requiring the IRS to return the two payments made by the Trustee in May 2001 to satisfy federal tax claims that the IRS had submitted in the E.D.N.Y. Bankruptcy totaling approximately $87,000, excluding interest.

## III. THE APPLICABLE STANDARD

The IRS has moved for dismissal of Erdheim's first and third causes of action on the basis of lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and to dismiss the third cause of action for a failure to state a claim under Fed. R. Civ. P. 12(b)(6).

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "When jurisdiction is challenged, the plaintiff 'bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.'" Arar v. Ashcroft, 532 F.3d 157,

---

resolving that claim, Erdheim's declaratory judgment cause of action will not be addressed here.

11

168 (2d Cir. 2008) (quoting APWU v. Potter, 343 F.3d 619,
623 (2d Cir. 2003)). "[J]urisdiction must be shown
affirmatively, and that showing is not made by drawing from
the pleadings inferences favorable to the party asserting
it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129,
131 (2d Cir. 1998) (citation omitted). As such, the Court
may rely on evidence outside the pleadings, including
declarations submitted in support of the motion and the
records attached to these declarations. See Makarova, 201
F.3d at 113 ("In resolving a motion to dismiss . . . under
Rule 12(b)(1), a district court . . . may refer to evidence
outside the pleadings.").


In considering a motion to dismiss pursuant to
Rule 12(b)(6), the Court construes the complaint liberally,
"accepting all factual allegations in the complaint as
true, and drawing all reasonable inferences in the
plaintiff's favor." Chambers v. Time Warner, Inc., 282
F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243
F.3d 687, 691 (2d Cir. 2001)). However, mere "conclusions
of law or unwarranted deductions of fact" need not be
accepted. First Nationwide Bank v. Gelt Funding Corp., 27
F.3d 763, 771 (2d Cir. 1994) (quotations and citation
omitted). "'The issue is not whether a plaintiff will

12

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 176 (2d Cir. 2004) (quoting <u>Geisler v. Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)). However, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In addressing the present motion, the Court is mindful that Erdheim is proceeding <u>pro se</u>. "Since most <u>pro se</u> plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than [they] would when reviewing

13

a complaint submitted by counsel." <u>Lerman v. Bd. of</u>
<u>Elections in City of N.Y.</u>, 232 F.3d 135, 139-40 (2d Cir.
2000).  However, "<u>pro se</u> status 'does not exempt a party
from compliance with relevant rules of procedural and
substantive law.'" <u>Triestman v. Fed. Bureau of Prisons</u>,
470 F.3d 471, 477 (2d Cir. 2006) (quoting <u>Traguth v. Zuck</u>,
710 F.2d 90, 95 (2d Cir. 1983)).

## IV.  THE FIRST CAUSE OF ACTION IS DISMISSED

Pursuant to Article III of the United States
Constitution, federal court jurisdiction is limited to
"Cases" and "Controversies."   The "case and controversy"
requirement means that, "at all times, the dispute before
the court must be real and live, not feigned, academic, or
conjectural." <u>Russman v. Bd. of Educ.</u>, 260 F.3d 114, 118
(2d Cir. 2001).  "When the issues in dispute between the
parties are no longer live, a case becomes moot, and the
court — whether trial, appellate, or Supreme — loses
jurisdiction over the suit, which therefore must be
dismissed." <u>Lillbask ex rel. Mauclaire v. State of Conn.</u>
<u>Dep't of Educ.</u>, 397 F.3d 77, 84 (2d Cir. 2005) (internal
quotations and citations omitted).

14

While the IRS does not dispute that it has, in
the past, erroneously attempted to collect on liabilities
already subject to the Settlement, Defendant asserts that
all such efforts have ceased and that Erdheim is no longer
deemed to have to any outstanding tax liability pursuant to
the Settlement.  Because the IRS has stopped its collection
efforts, Erdheim's injunctive claim has been rendered moot
to the extent that it seeks to enjoin the IRS from
collecting these funds.  See Independence Party of Richmond
County v. Graham, 413 F.3d 252, 255-56 (2d Cir. 2005)
("[I]f an event occurs while a case is pending . . . that
makes it impossible for the court to grant any effectual
relief whatever to a prevailing party, we must dismiss the
case, rather than issue an advisory opinion." (internal
quotations and citations omitted)).  Further, since there
is no indication that the IRS ceased its collection efforts
simply to moot out Erdheim's claims, but rather in
recognition of the validity of the Settlement, such
collection efforts cannot reasonably be expected to recur,
and the "capable of repetition, yet evading review"
exception to the Article III requirement does not apply.
See generally Irish Lesbian & Gay Org. v. Giuliani, 143
F.3d 638, 647 (2d Cir. 1998).

15

In his opposition papers, Erdheim relies on a
December 19, 2007 letter from Defendant to demonstrate that
the IRS has persisted in seeking to recover liabilities
that it is no longer owed.  The letter describes in general
terms the IRS's position with respect to the non-payment of
federal tax returns and recites certain provisions of the
Internal Revenue Code.  However, the IRS has clarified that
the December 19, 2007, letter was sent to Erdheim in error,
see Pl.'s Aff. and Ex. in Opp. to Def.'s Mot., Ex. G, and
therefore it does not support Plaintiff's position that the
IRS's collection efforts are on-going.

The IRS has also consented to an order precluding
future collection efforts based on any liabilities subject
to the Settlement.  See Mem. of Law in Support of Mot. to
Dismiss, at 11 n.9.  Therefore, to the extent that
Plaintiff's injunctive claim can be construed to seek
relief with respect to future collection efforts by the
IRS, that claim is also moot.

Finally, as to Plaintiff's request for an order
compelling the IRS to notify "appropriate [c]redit
[reporting] agencies" as to the release of federal tax
liens levied against him, see Complaint at ¶ 73, the Anti-

16

Injunction Act bars the issuance of such an order.  See 26
U.S.C. § 7421(a) ("Except as [specifically] provided . . .
no suit for the purpose of restraining the assessment or
collection of any tax shall be maintained in any court by
any person . . . ."); see also Weiner v. I.R.S., 986 F.2d
12, 13 (2d Cir. 1993) (per curiam) (explaining that there
is no "path to legal redress" for a taxpayer where IRS made
clear errors).

Because Erdheim has not shown that a case or
controversy remains as to his injunctive claim, the IRS's
motion to dismiss the first cause of action is granted.

## V.   ERDHEIM'S THIRD CAUSE OF ACTION IS ALSO DISMISSED

Defendant has also moved to dismiss Erdheim's
third cause of action, which asserts a refund claim
pursuant to 26 U.S.C. § 7422.  That section of the Internal
Revenue Code specifically limits jurisdiction of the
federal courts over tax refund claims to cases where the
taxpayers have exhausted administrative remedies by "duly
fil[ing]" "a claim for refund or credit" with the IRS in
accordance with applicable Internal Revenue Code provisions
and IRS regulations.  26 U.S.C. § 7422(a).  Another

17

provision, 26 U.S.C. § 6511(a), further establishes a
timeliness requirement for the filing of administrative
refund claims.  Such claims must be filed "within 3 years
from the time the return was filed or 2 years from the time
the tax was paid, whichever of such periods expires the
later, or if no return was filed by the taxpayer, within 2
years from the time the tax was paid."  Id.

These statutory provisions "establish strict
timeframes for filing" claims for refunds and overpayments
and impose an administrative exhaustion requirement.  See
United States v. Clintwood Elkhorn Mining Co., 128 S. Ct.
1511, 1514-15 (2008).  "Read together, the import of these
sections is clear: unless a claim for refund of a tax has
been filed within the time limits imposed by § 6511(a), a
suit for refund . . . may not be maintained in any court."
Id. at 1515.

Erdheim has not alleged that he ever filed a
timely administrative claim for refund with the IRS.  Even
drawing all reasonable inferences in Erdheim's favor, and
treating his discussions with the IRS's Taxpayer Advocate
Service concerning his tax liabilities as an informal claim
for refund, such a claim was still untimely.  According to

18

the complaint, Erdheim did not begin communicating with the

Taxpayer Advocate Service until 2005, at least three and

half years after the May 2001 payments were made to the IRS

and outside of the three-year period prescribed by 26

U.S.C. § 6411(a).  See Crosby-Jean v. Dep't of Treasury,

No. 02 Civ. 10030 (TPG), 2004 WL 691315, at *2 (S.D.N.Y.

Mar. 31, 2004).  Because Erdheim has not met the

administrative exhaustion requirement for filing his refund

claim, his claim must be dismissed pursuant to Rule

12(b)(1).  See Roberts v. I.R.S., 468 F. Supp. 2d 644, 650

(S.D.N.Y. 2006) (dismissing cause of action where

"plaintiff's 'failure to comply with the regulation

deprives the federal district court of jurisdiction.'"

(quoting Stephens v. United States, 437 F. Supp. 2d 106,

109 (D.D.C. 2006)).[2]

In the alternative, the IRS has also moved to

dismiss the third cause of action pursuant to Rule 12(b)(6)

for failure to state a claim.  In assessing the sufficiency

of Erdheim's refund claim, the Stipulation is considered in

---

[2] The doctrine of equitable recoupment, "a judicially created exception
to the statutory limitation periods contained in the tax laws," Bedell
v. United States, No. 87 Civ. 7751 (CSH), 1991 WL 12410, at *3
(S.D.N.Y. Jan. 23, 1991), does not provide this Court with independent
jurisdiction over Erdheim's refund claim.  See United States v. Dalm,
494 U.S. 596, 608 (1990) (holding that equitable recoupment, without
more, does not give court jurisdiction over refund claims).

19

its entirety because the Settlement is "integral" to the complaint.  See Chambers, 282 F.3d at 152-53 (resolving Rule 12(b)(6) motion to dismiss, courts can consider document not incorporated by reference but relied on heavily in the complaint).  The Settlement specifically provides that the IRS can "keep any refund . . . due [plaintiff] because of overpayment of any tax or other liability, for tax periods extending through the calendar year that the IRS accepts the offer," or through 2004.  Baxter Decl., Ex. 3.  Such unambiguous language precludes Erdheim from asserting a claim for refund, and accordingly Defendant is also entitled to dismissal of the refund claim pursuant to Rule 12(b)(6).  See PARCC Health Care, Inc. v. United States, No. 01 Civ. 379 (JBA), 2007 WL 4707749, at *2 (D. Conn. Nov. 1, 2007).

## VI.  CONCLUSION

        Based on the conclusions set forth above and the consent of the IRS, the motion of the IRS is granted, the first and third causes of action of the complaint are dismissed, and the IRS is precluded from pursuing future collection efforts with respect to the liabilities subject to the Settlement.

20

It is so ordered.

New York, NY
September    /    , 2009

ROBERT W. SWEET
U.S.D.J.